Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| BANCO POPULAR DE PUERTO RICO<br><br>Demandante - Apelado<br><br>v.<br><br>JOSÉ ALEJANDRO ZABALA RODRÍGUEZ E ISMAEL RODRÍGUEZ LÓPEZ<br><br>Demandados - Apelantes | TA2026AP00351 | Apelación procedente del Tribunal de Primera Instancia, Sala de Caguas<br><br>Civil núm.: GR2025CV00469<br><br>Sobre: Cobro de Dinero |
|---|---|---|

Panel integrado por su presidente, el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio.

Sánchez Ramos, juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de abril de 2026.

El Tribunal de Primera Instancia ("TPI") dictó sentencia en rebeldía en un caso sobre cobro de dinero relacionado con la venta de un vehículo de motor. Según se explica en detalle a continuación, concluimos que actuó correctamente el TPI, pues dicho foro adquirió jurisdicción sobre los demandados vía emplazamientos personales, habiendo estos optado por no comparecer ni defenderse.

I.

En diciembre de 2025, el Banco Popular de Puerto Rico (el "Banco") presentó la acción de referencia (la "Demanda"), sobre cobro de dinero, contra el Sr. José Alejandro Zabala Rodríguez (el "Comprador") y el Sr. Ismael Rodríguez López (el "Garantizador"; junto al Comprador, los "Deudores").

Se alegó que, en septiembre de 2023, los Deudores suscribieron un *Contrato de Venta al Por Menor a Plazos* (el "Contrato"), ello en conexión con la adquisición de un vehículo de motor (el "Vehículo"), el cual se ofreció como garantía mobiliaria.

El Banco alegó que los Deudores incumplieron con los pagos contemplados por el Contrato. A raíz de ello, el Banco afirmó que, en septiembre de 2024, los Deudores entregaron voluntariamente el Vehículo, el cual fue luego vendido por el Banco. Se alegó que, luego de dicha venta, los Deudores le deben al Banco "la cantidad de $24,865.35 por concepto de deficiencia". Se acompañó con la Demanda copia del Contrato, de un *Acuerdo de Entrega Voluntaria por Deudor de Bien Mueble a Gravamen Mobiliario* (el "Acuerdo de Entrega"), así como unas cartas enviadas por el Banco a los Deudores en cobro de la deficiencia reclamada.

El 3 de febrero, el Banco acreditó que cada uno de los Deudores había sido emplazado personalmente.

Ante la ausencia de comparecencia por los Deudores, el 26 de febrero, el Banco solicitó que se les anotara la rebeldía y que se dictara sentencia sin vista. Acompañó una Declaración jurada, suscrita por una funcionaria del Banco (la "Declaración"), en la cual se afirmó que, según los récords del Banco, los Deudores deben al Banco, bajo los términos del Contrato, la cuantía reclamada en la Demanda.

Mediante una Sentencia, notificada el 4 de marzo (la "Sentencia"), el TPI declaró con lugar la Demanda y, por tanto, concedió al Banco el remedio solicitado en la Demanda.

El 6 de abril[1], los Deudores presentaron la apelación de referencia. Plantean que la firma del Garantizador en el Acuerdo de Entrega "no corresponde a su firma real". También alegan que, cuando "se efectuó la entrega física del vehículo", un "empleado del banco … le[s] manifestó que la llamada 'entrega voluntaria' no conllevaría trámite ulterior [ni] se le[s] cobraría deficiencia alguna". Arguyen que la "suficiencia probatoria" de la Declaración es

---

[1] Primer día laborable en el Poder Judicial luego del 1 de abril de 2026.

"claramente deficiente". Finalmente, sostienen que el Banco debió incluir como demandada a la esposa del Garantizador.

Oportunamente, el Banco presentó su alegato en oposición. Resolvemos.

## II.

El propósito de la anotación de rebeldía es desalentar el uso de la dilación como estrategia de litigación. *Rivera Figueroa v. Joe's European Shop,* 183 DPR 580 (2011). Este mecanismo procesal está recogido en la Regla 45.1 de las de Procedimiento Civil, 32 LPRA Ap. V, la cual permite que el tribunal, *motu proprio* o a solicitud de parte, le anote la rebeldía a una parte por no comparecer a contestar la demanda, entre otras razones. *Bco. Popular v. Andino Solís,* 192 DPR 172 (2015); *Álamo v. Supermercado Grande, Inc.*, 158 DPR 93, 100 (2002). Es decir, cuando una parte ha dejado de ejercitar su derecho a defenderse, se coloca en la posición procesal de la rebeldía. *Bco. Popular,* 192 DPR a la pág. 179.

Por su parte, en el penúltimo párrafo la Regla 45.1 de las de Procedimiento Civil, *supra,* se señalan los efectos o consecuencias de la anotación de rebeldía. Estos efectos se resumen en que se dan por admitidos todos los hechos bien alegados en la demanda o la alegación que se haya formulado contra el rebelde y se autoriza al tribunal para que dicte sentencia, si ésta procede como cuestión de derecho. 32 LPRA Ap. V, R. 45.1; véase, además, *Rivera Figueroa,* 183 DPR a la pág. 590.

## III.

Concluimos que el TPI actuó correctamente al dictar la Sentencia.

En primer lugar, el TPI actuó correctamente al anotarle la rebeldía a los Deudores. Adviértase que ello ocurrió luego de que los Deudores, a pesar de haber sido válidamente emplazados,

personalmente, optaran por no contestar la Demanda ni comparecer de forma alguna ante el TPI.

En segundo lugar, el TPI también actuó correctamente al dictar la Sentencia. Por el efecto de la anotación de rebeldía, se consideran probadas las alegaciones bien hechas en la Demanda y, además, en este caso el Banco sometió una declaración jurada en apoyo de las mismas, además del Contrato. Es decir, el TPI tuvo ante sí alegaciones bien formuladas sobre la cuantía reclamada, junto a suficientes documentos en apoyo de las sumas reclamadas.

En tercer lugar, en momento alguno los Deudores han planteado que lo alegado por el Banco, en cuanto a la existencia y el monto de la deuda, no se ajuste a la realidad. La "controversia" sobre la firma del Garantizador en el Acuerdo de Entrega no incide sobre lo anterior, pues los Deudores admiten que el Vehículo en efecto se entregó al Banco, y no han alegado que dicha entrega hubiese sido "involuntaria"[2].

Lo relacionado con la supuesta representación de un empleado del Banco, cuando se le entregó el Vehículo, no tiene pertinencia, pues, al no haber comparecido a defenderse ante el TPI, los Deudores están impedidos de plantear este asunto fáctico por primera vez ante este Tribunal. En cualquier caso, la realidad es que, ni ante el TPI, ni ante este Tribunal, los Deudores han presentado evidencia alguna en apoyo de esta aseveración. Más aún, si esta aseveración se pudiese probar, ello de forma alguna cambiaría el hecho, no disputado por los Deudores, de la existencia y exigibilidad de la deuda aquí reclamada bajo los términos del Contrato.

---

[2] En cualquier caso, al examinar la firma del Garantizador en el Acuerdo de Entrega, y compararla con la que aparece en el Contrato, no se observa diferencia material alguna.

Finalmente, tampoco tiene pertinencia que la esposa del Garantizador no haya sido incluida como parte demandada. No se trata de una parte indispensable. Veamos.

La Regla 16.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 16.1, define una parte indispensable como las "personas que tengan un interés común sin cuya presencia no pueda adjudicarse la controversia [...]". Véanse, además, *Watchtower Bible v. Mun. Dorado I,* 192 DPR 73, 118 (2014); *Bonilla Ramos v. Dávila Medina,* 185 DPR 667, 678 (2012); *Deliz et als. v. Igartúa et als.,* 158 DPR 403, 432 (2003); *Sánchez v. Sánchez,* 154 DPR 645, 678 (2001); *Pérez Rosa v. Morales Rosado,* 172 DPR 216, 223 (2007); *Romero v. S.L.G. Reyes,* 164 DPR 721, 733 (2005).

El interés de la parte debe ser "real e inmediato", para que se considere que dicha parte es indispensable; no puede tratarse de "meras especulaciones o de un interés futuro". *Deliz et als.,* 158 DPR a la pág. 435 (énfasis en el original). El "alcance" de la figura de parte indispensable es "restringido", de forma que solamente puede invocarse cuando la "adjudicación sin la persona ausente tendría un efecto perjudicial sobre el interés real e inmediato" de esta. *García Colón v. Sucn. González,* 178 DPR 527, 549 (2010), citando a *Mun. de Ponce v. A.C. et al.,* 153 DPR 1, 16 (2000).

Para determinar si una parte es realmente indispensable, debemos adoptar un enfoque pragmático, pues el asunto dependerá de los "hechos particulares y específicos" del caso. *Deliz et als.,* 158 DPR a la pág. 434, citando *Granados Navedo v. Rodríguez Estrada II,* 124 DPR 593, 605 (1989). Debemos realizar "una evaluación individual de acuerdo con las circunstancias particulares presentes en cada caso" y no utilizar una "fórmula con pretensiones omnímodas". *García Colón,* 178 DPR a la pág. 550.

En ese contexto, al determinar si estamos ante una parte indispensable, debemos evaluar los siguientes factores: (1) el interés común de todas las partes sobre el asunto medular del pleito; (2) la inmediatez de ese interés ante el litigio en proceso; y (3) la necesidad de que la presencia de la parte acumulada garantice un remedio completo a las partes que ya están en el caso. *Íd.*; *Romero*, 164 DPR a la pág. 733.

En este caso, el Banco podía obtener, y en efecto obtuvo, un remedio completo contra los Deudores, sin la presencia de la esposa del Garantizador. Igualmente, la Sentencia fue dictada únicamente contra los Deudores, por lo que, de su faz, los intereses de la esposa del Garantizador no se afectan. Es solo en el supuesto incierto de que, en algún momento, el Banco determinase que tienen interés en reclamarle a la esposa del Garantizador por la ejecución de la Sentencia, que esta parte tendría derecho a ser oída y defenderse. Sin embargo, para fines del trámite acontecido hasta el momento, su presencia no era indispensable.

IV.

Por los fundamentos anteriormente expuestos, se confirma la sentencia apelada.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones